UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA LOGAN-LARACUENTE, | 1:07-cv-983-SMS |
| Plaintiff, | DECISION AND ORDER ON SOCIAL SECURITY COMPLAINT (DOC. 1) |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ORDER DIRECTING REMAND PURSUANT TO SENTENCE FOUR of 42 U.S.C. § 405(g) |
| Defendant. | ORDER DIRECTING THE CLERK TO ENTER JUDGMENT FOR PLAINTIFF BARBARA LOGAN-LARACUENTE AND AGAINST DEFENDANT MICHAEL J. ASTRUE |

Plaintiff is represented by counsel and is proceeding with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings

1  in this matter, including ordering the entry of final judgment.[1]

2  The matter is currently before the Court on the parties' briefs,

3  which have been submitted without oral argument to the Honorable

4  Sandra M. Snyder, United States Magistrate Judge.

5      I. Procedural Summary

6      On September 5, 2003, Plaintiff applied for Disability

7  Insurance Benefits (DIB), alleging disability since December 2,

8  1999, due to fibromyalgia, Raynaud's syndrome, vertigo, macular

9  degeneration, cataract, muscle spasms, chronic pain and fatigue,

10  and bilateral epicondylitis. (A.R. 64-66, 104.) After Plaintiff's

11  claim was denied initially and on reconsideration, Plaintiff

12  requested, and appeared at, a hearing before the Honorable James

13  M. Mitchell, Administrative Law Judge (ALJ) of the Social

14  Security Administration (SSA), on January 11, 2006. Plaintiff

15  appeared with an attorney and testified. (A.R. 18, 29-32, 545-

16  84.) On August 10, 2006, the ALJ denied Plaintiff's application

17  for benefits. (Id. at 18-26.) Plaintiff appealed the ALJ's

18  decision to the Appeals Council. After the Appeals Council denied

19  Plaintiff's request for review on February 26, 2007, Plaintiff

20  filed the complaint in this action on July 9, 2007, after

21  Plaintiff was given until July 10, 2007, to file a civil action.

22  (Id. at 6.) Briefing commenced on March 17, 2008, and was

23  completed on May 29, 2008, with the filing of Plaintiff's

24  response to Defendant's opposition.

25  //////

26

27      [1] On October 12, 2007, the Honorable Garland E. Burrell, Jr., reassigned the case to Magistrate Judge Gary
    S. Austin; on October 17, 2008, District Judge Lawrence J. O'Neill assigned the case for all purposes to Magistrate
28  Judge Austin. By minute order dated January 10, 2008, the case was assigned to the undersigned Magistrate Judge.

II. <u>Scope and Standard of Review</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's

determination that the claimant is not disabled if the
Commissioner applied the proper legal standards, and if the
Commissioner's findings are supported by substantial evidence.
See, Sanchez v. Secretary of Health and Human Services, 812 F.2d
509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If
the Court concludes that the ALJ did not use the proper legal
standard, the matter will be remanded to permit application of
the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th
Cir. 1987).

   III. Disability

    In order to qualify for benefits, a claimant must establish
that she is unable to engage in substantial gainful activity due
to a medically determinable physical or mental impairment which
has lasted or can be expected to last for a continuous period of
not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).
A claimant must demonstrate a physical or mental impairment of
such severity that the claimant is not only unable to do the
claimant's previous work, but cannot, considering age, education,
and work experience, engage in any other kind of substantial
gainful work which exists in the national economy. 42 U.S.C.
1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th
Cir. 1989). The burden of establishing a disability is initially
on the claimant, who must prove that the claimant is unable to
return to his or her former type of work; the burden then shifts
to the Commissioner to identify other jobs that the claimant is
capable of performing considering the claimant's residual
functional capacity, as well as her age, education and last
fifteen years of work experience. Terry v. Sullivan, 903 F.2d

1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (2006);[2] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

Here, the ALJ found that Plaintiff's severe impairments of fibromyalgia, asthma, myopic macular degeneration, and depression did not meet or medically equal a listed impairment, and Plaintiff had the residual functional capacity (RFC)[3] to perform

---

[2] All references are to the 2006 version of the Code of Federal Regulations unless otherwise noted.

[3] Social Security regulations define residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998) (citing 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c) and Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995)). The

the exertional requirements of light work, lifting twenty pounds
occasionally and ten pounds frequently, standing and/or walking
for six hours, and sitting for six hours in an eight-hour workday
with normal breaks. Plaintiff had slight limitations with
reaching and performing simple, routine, repetitive tasks; she
needed supervision occasionally (very little, up to one-third of
the time, or approximately two hours in an eight-hour workday);
and she required medication three times a day or less for asthma.
(A.R. 21.) Plaintiff had diminished but correctable vision. (Id.)[4]

IV. Treatment of the Experts' Opinions

A. Introduction

As a preliminary matter, the Court notes that Plaintiff does
not challenge the credibility findings of the ALJ, who rejected
Plaintiff's subjective complaints of disabling fatigue, vertigo,
depression, anxiety, blurred vision, pain, memory loss, and
inability to concentrate or maintain balance as inconsistent with
the objective medical evidence and clinical findings as well as
with Plaintiff's own behavior. (A.R. 21-23.) Further, he recited
numerous inconsistencies in Plaintiff's statements and activities
regarding her medical history, substance abuse, prior suicide

Commissioner must evaluate the claimant's "ability to work on a sustained
basis." Id. (citing 20 C.F.R. § 404.1512(a)); Lester, 81 F.3d at 833); see 20
C.F.R. § 416.945. A "regular and continuing basis" means eight hours a day,
five days a week, or an equivalent work schedule. S.S.R. 96-8p at 1, 2. The
process involves an assessment of physical abilities and then of the nature
and extent of physical limitations with respect to the ability to engage in
work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b).
Occasional symptom-free periods and even the sporadic ability to work are not
inconsistent with disability. Reddick v. Chater, 157 F.3d at 724.

[4] The ALJ found medically determinable impairments of hypertension and hypercholesterolemia without
evidence of end organ damage, paroxysmal benign positional vertigo that caused nausea, and Raynaud's
phenomenon and right knee degenerative joint disease which did not result in any apparent functional limitations.
The ALJ concluded that these impairments were not severe because they did not result in more than a slight
functional limitation and were not expected to last more than twelve months. (A.R. 20-21.)

1 attempts, and symptoms associated with depression. (A.R. 24.) The
2 ALJ relied in part on the opinion of Joe Azevedo, Ph.D., who in
3 August 2005 noted that test results indicated that Plaintiff's
4 profile reflected exaggeration of symptoms or malingering. (A.R.
5 23, 526.) The ALJ also concluded generally that Plaintiff's
6 mental impairment improved over time and that she exaggerated her
7 mental and physical limitations. (A.R. 24.)

8     In the main, Plaintiff's challenges concern asserted
9 inadequacies in the ALJ's articulation of his reasoning and
10 findings concerning the experts' opinions regarding Plaintiff's
11 RFC. Plaintiff argues that the ALJ failed to articulate
12 adequately the necessary specific, legitimate reasons for
13 rejecting portions of the opinions of treating physicians,
14 consulting, examining physicians, and non-examining state agency
15 physicians on whose opinions the ALJ had expressly placed weight.
16 It was this reasoning process that resulted in the ALJ's adopting
17 an RFC that the ALJ found permitted Plaintiff's performance of
18 her past relevant work of quality assurance as performed. (A.R.
19 25.)

20     Plaintiff also challenges the ALJ's finding that her vision
21 condition was correctable and did not result in any functional
22 limitations.

23         B. <u>Treating Physicians' Opinions</u>

24           1. <u>Legal Standards</u>

25     The standards for evaluating treating source's opinions are
26 as follows:

27           By rule, the Social Security Administration favors
          the opinion of a treating physician over
28           non-treating physicians. See 20 C.F.R. § 404.1527.
          If a treating physician's opinion is

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." Id. § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Id. § 404.1527(d)(2)(i)-(ii). Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. Id. § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Id. § 404.1527(d)(3)-(6).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

As to the legal sufficiency of the ALJ's reasoning, the governing principles have been recently restated:

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. Lester [v. Chater, 81 F.3d 821, 830 (9th Cir.1995) (as amended).] Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. (internal quotation marks omitted). Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Id. at 830, quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983). This can be done by setting out a detailed

8

1  and thorough summary of the facts and conflicting
   clinical evidence, stating his interpretation thereof,
2  and making findings. <u>Magallanes [v. Bowen</u>, 881 F.2d
   747, 751 (9th Cir.1989).] The ALJ must do more than
3  offer his conclusions. He must set forth his own
   interpretations and explain why they, rather than the
4  doctors', are correct. <u>Embrey v. Bowen</u>, 849 F.2d 418,
   421-22 (9th Cir.1988).
5  <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir.1998);
   accord <u>Thomas</u>, 278 F.3d at 957; <u>Lester</u>, 81 F.3d at
6  830-31.

7  <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).

8       The path of analysis required to be followed by an ALJ is

9  established. The ALJ is first required to determine whether or

10 not the opinion of the treating physician will be given

11 controlling weight, which in turn requires consideration of

12 whether or not the treating physician's opinion is well-supported

13 by medically acceptable clinical and laboratory diagnostic

14 techniques and is not inconsistent with the other substantial

15 evidence in the case record. <u>Orn</u>, 495 F.3d at 631.

16      If not given controlling weight, the opinion is then subject

17 to consideration in light of other specified factors, including

18 the nature and extent of the treatment relationship, the amount

19 of relevant evidence that supported the opinion, the quality of

20 the explanation provided, the consistency of the opinion with the

21 record as a whole, the specialty of the doctor providing the

22 opinion, and other factors such as the degree of understanding of

23 the Commissioner's disability programs and their evidentiary

24 requirements and the degree of his or her familiarity with the

25 other information in the record. <u>Orn</u>, 495 F.3d at 631.

26      The Court is mindful of the fundamental principle of review

27 operative in this case, namely, that this Court is limited to

28 reviewing the findings of the ALJ and to reviewing the specific

facts and reasons that the ALJ asserts. <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003) (holding in part that the mere presence of evidence in the record that would support an ALJ's conclusions, in the absence of the ALJ's discussion thereof, was insufficient). An ALJ need not discuss evidence that is neither significant nor probative. <u>Howard v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003). However, with respect to significant, probative evidence, such as an expert opinion, an ALJ must explicitly reject the opinion and set forth specific reasons of the requisite force for doing so. <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1464 (9th Cir. 1996) (holding that the ALJ erred in failing to explicitly reject an opinion and set forth specific, legitimate reasons for crediting another opinion). The district court cannot make findings for the ALJ. <u>Id.</u> A district court cannot affirm the judgment of an agency on a ground the agency did not invoke in making its decision. <u>Pinto v. Massanari</u>, 249 F.3d 840, 847-48 (9th Cir. 2001). Even application of the harmless error rule is circumscribed by this basic requirement. Where an error consists of an ALJ's failure to discuss probative evidence properly, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the evidence, could have reached a different disability determination. <u>Stout v. Commissioner of Social Security</u>, 454 F.3d 1050, 1056 (9th Cir. 2006) (concluding that an ALJ's failure to evaluate and state reasons for evaluating lay testimony was not harmless). The authorities thus reflect the fundamental principle that the ALJ's opinion must contain sufficient findings to permit intelligent judicial review,

1 particularly with respect to significant probative evidence.

2 Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).

3                           2. Dr. Chan

4        Dr. Jackie T. Chan, M.D., a diplomate of the American Board

5 of Physical Medicine & Rehabilitation with a subspecialty Board

6 certification in pain management, and a diplomate of the American

7 Board of Electrodiagnostic Medicine, treated Plaintiff for her

8 physical condition from January 2000 through May 2002. (A.R. 272-

9 338.) Dr. Chan diagnosed fibromyalgia and epicondylitis, imposed

10 various restrictions, and recommended vocational rehabilitation

11 if appropriate. In June 2000, Dr. Chan opined in connection with

12 a worker's compensation issue that Plaintiff was permanent and

13 stationary. (A.R. 302.) Dr. Chan found diffuse body aches, worse

14 in the cervical and upper shoulder as well as bilateral upper

15 extremities, consistent with fibromyalgia, with intermittent

16 slight pain progressing to constant moderate pain on exertional

17 activities with heavy lifting and any type of repetitive typing

18 or keying using the upper extremities, and with intermittent

19 paresthesia in the medial hands bilaterally. Objective findings

20 were minimal (normal extremity and neurological exams with 5/5

21 strength and no focal weakness) except for decreased range of

22 motion (seventy-five per cent) of the cervical and lumbar spine,

23 tenderness consistent with fibromyalgia tender points, and

24 additional bands and trigger points on examination in the upper

25 shoulder and cervical regions.

26        Dr. Chan opined that Plaintiff had lost approximately fifty

27 per cent of her pre-injury capability for lifting as well as

28 suffering decreased capability for flexion, extension, bending,

1  and rotation of the neck, precluding heavy lifting and equating

2  to a standard rating of twenty per cent. (A.R. 302, 22.) Dr. Chan

3  imposed prophylactic work restrictions of no lifting greater than

4  fifteen pounds, no repetitive bending or twisting of the neck, no

5  grasping and no keyboarding greater than one hour per day and not

6  greater than twenty minutes at a time; no pulling or pushing or

7  objects greater than fifty pounds, with vocational rehabilitation

8  if a permanent alternative position were unavailable. (A.R. 302.)

9       In August 2000, Dr. Chan also gave Plaintiff jury excuse

10 with a note that "she cannot sit for greater than one hour at a

11 time due to fibromyalgia and back pain." (A.R. 293.)

12      Dr. Chan had opined in April 2000 that Plaintiff was unable

13 to return to her pre-injury level of work, which required sitting

14 and typing in front of a computer all day long. (A.R. 312.) The

15 record affirmatively reflects that Plaintiff's permanent work

16 restrictions continued in April 2001 (A.R. 287-88), range of

17 motion of the right elbow was limited with flexion only to 110

18 degrees with end-range pain in July 2001 (A.R. 281-82), and short

19 periods of walking were prescribed in January 2002 when a DMV

20 disability placard was extended to July 2002 (A.R. 278).

21      The ALJ noted Dr. Chan's findings and then stated:

22      However, in August 2000, Dr. Chan opined claimant was
        able to work as a real estate agent or as a social service
23      aide.

24 (A.R. 22, 295.)

25      The record reveals that on August 14, 2000, Dr. Chan wrote

26 Mr. Jeffrey Miller, Vocational Rehabilitation Counselor, that she

27 had received job descriptions for a real estate agent and social

28 service aide; Plaintiff could perform the aide position if it did

1  not require performing any childcare, accompanying handicapped

2  persons to appointments, lifting of children or objects greater

3  than fifteen pounds, or pushing or pulling of objects greater

4  than fifteen pounds, such as wheelchairs. (A.R. 295.)

5  Requirements for the real estate agent could be performed without

6  problems or restrictions.

7      Unfortunately, the parties do not indicate that the job

8  descriptions are in the record. Thus, the probative force of this

9  letter lies mainly in the underlying assertion that Plaintiff's

10 physical impairments did not preclude her from all work.

11 Nevertheless, the restrictions that Dr. Chan imposed with respect

12 to Plaintiff's capacity appear to have continued. Thus, the

13 recommendation concerning the positions does not appear to be

14 inconsistent with the limitations imposed by Dr. Chan.

15     The Court concludes that the fact that Dr. Chan opined that

16 Plaintiff's physical impairments did not preclude work that was

17 consistent with the limitations Dr. Chan imposed did not

18 constitute a specific, legitimate basis for rejecting those

19 limitations.

20     Further, as Plaintiff notes, the ALJ did not expressly

21 reject these limitations or explain any reasoning that might have

22 supported any such rejection. Indeed, the ALJ expressly placed

23 "more weight" on Dr. Chan's opinion because she was a treating

24 physician. (A.R. 25.) Yet the RFC assigned to Plaintiff by the

25 ALJ was for greater exertional ability than Dr. Chan's maximum

26 fifteen-pound limit: the ALJ found that Plaintiff could perform

27 light work, or maximum lifting of twenty pounds occasionally and

28 ten pounds frequently. (A.R. 21.) Further, the ALJ found that

1  Plaintiff could sit for six hours in an eight-hour workday with
2  normal breaks; thus, the ALJ's RFC was significantly beyond Dr.
3  Chan's maximum of one hour of sitting. (Id.) The ALJ imposed only
4  nonspecific "slight limitations" with reaching, and he
5  articulated no limitations on rotation of the neck, repetitive
6  bending or twisting of the neck, grasping, keyboarding, or any
7  postural limitations flexion, extension, or bending. (A.R. 21.)

8      It thus appears that the ALJ's RFC was significantly
9  inconsistent with a treating physician's opinion that the ALJ had
10  expressly credited.

11      An ALJ may not selectively focus on aspects of an expert's
12  report that tend to suggest non-disability, such as ignoring
13  express limitations of function and medical findings relevant to
14  such limitations. Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th
15  Cir. 2006). If an ALJ does so, then his decision is not supported
16  by substantial evidence. Id.

17      Here, the ALJ's decision was flawed in that the ALJ did not
18  address the significant, probative evidence of Dr. Chan's
19  inconsistent restrictions resulting from Plaintiff's physical
20  impairments, and did not set forth specific, legitimate reasons
21  for rejecting those portions of the opinion. The Court
22  understands that it was the ALJ's prerogative to weigh the
23  opinions and state reasons for doing so; here, the precise
24  conclusions and the reasoning concerning the opinion evidence was
25  not sufficiently specific and express to meet the ALJ's
26  obligation.

27          3. Dr. Cheang
28      Dr. Debra Jane Cheang, M.D., conducted a psychiatric

14

examination and evaluation of Plaintiff on October 6, 2004, upon
the referral of Plaintiff's therapist, Dr. Brinks. Dr. Chang also
followed Plaintiff's case through June 2005, seeing Plaintiff
approximately eight times and treating her with adjusted
medications. (A.R. 493-503.) Plaintiff related a history of
depression from age nineteen with physical abuse from her first
boyfriend.

The ALJ stated this summary:

> The record contains progress notes from Debra Cheang,
> M.D., in which claimant reported a history of two
> suicide attempts and she had symptoms of erratic sleep,
> increased appetite, fatigue, low libido, anhedonia and
> lack of motivation. (Citation omitted.) Dr. Cheang
> had the diagnoses of major depression, rule out
> double depression and a GAF score of 50. (Citation
> omitted.) However, subsequent progress notes indicate
> claimant was doing better and had periods of improvement
> in which she reported increased motivation and
> ability to focus and she was busy taking care of her
> grandchildren.

(A.R. 24.)[5]

The record supports the ALJ's finding. In November 2004,
Plaintiff reported that she was significantly better, with
increased energy, motivation, and desire to do things, and
improved sleep with only two mild depressive episodes. (A.R.
499.) In February 2005, Plaintiff reported that she was getting
better. (A.R. 500.) In April 2005, Plaintiff felt somewhat better
but not quite back to normal; her sleep and appetite were O.K.

---

[5] GAF, or global assessment of functioning, is a report of a
clinician's judgment of the individual's overall level of functioning that is
used to plan treatment and to measure the impact of treatment as well as to
predict its outcome. American Psychiatric Association, Diagnostic and
Statistical Manual of Mental Disorders at 32 (4th ed., text revision) (DSM-IV-
TR). A GAF of 50 (i.e., in the range of 41-50) indicates serious symptoms
(e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or
any serious impairment in social, occupational, or school functioning (e.g.,
no friends, unable to keep a job). DSM-IV-TR at 34.

(A.R. 500-01.) In June 2005, Plaintiff reported feeling somewhat better despite problems with motivation, and she was busy taking care of her grandchildren. (A.R. 502.)

It is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Here, in the context of the entire record, the inconsistency of Plaintiff's later, documented improvement was a specific, legitimate reason for rejecting any limitations imposed by Dr. Chaen.

### 4. Dr. Moles

Dr. Edward Moles, Ph.D., treated Plaintiff from September 2005 through January 2006. Dr. Moles diagnosed major depression, recurrent, pain disorder associated with psychiatric condition, with guarded to poor prognosis; he assessed ability to manage finances; fair to satisfactory ability to follow work rules, relate to coworkers, use judgment, interact with supervisors, maintain personal appearance, and relate predictably in social situations; and poor ability to deal with the public, work stress, function independently, maintain attention and concentration, understand, remember, and carry out simple, complex, or detailed but not complex job instructions, behave in an emotionally stable manner, and demonstrate reliability. (A.R. 532-33, 529-33.)

The ALJ noted that Dr. Moles was a treating source. (A.R.

24.) In evaluating the opinion evidence, the ALJ stated:

> The opinion of Dr. Moles is given little weight because it is comprised of conclusive statements that are inconsistent with the weight of the other opinions in the record and claimant's activities and there are no corresponding treatment notes.

(A.R. 25.)

No party points to any treatment notes in the record that support Dr. Moles's opinion. His opinion is inconsistent with Plaintiff's activities, including travel, care for her grandchildren, attending training, driving herself to the doctor, participation in running errands and household tasks, etc. (A.R. 339-40, 523-24.)

Finally, although some examining doctors, such as Dr. Rajguru, did not expressly assess Plaintiff's mental impairment and/or its effects, Dr. Moles's opinion was nevertheless inconsistent with the assessment of other consulting, examining physicians.

These physicians include Mandeep Behniwahl, M.D., who in December 2003 found a normal exam, mood and affect, memory, and concentration during a consulting psychiatric examination; understood that Plaintiff denied being depressed; and opined that Plaintiff could perform simple, repetitive tasks and should be able to perform detailed and complex tasks; could accept instructions and interact with supervisors, coworkers, and the public; and could perform work activities on a consistent basis without any special or additional supervision, maintain regular attendance in the workplace, complete a normal work day or work week without interruptions from her psychiatric condition, and handle the stress encountered in competitive work. (A.R. 339-43.)

1    Dr. Moles's opinion was inconsistent with the opinion of

2 consulting, examining psychiatric evaluator Larry Sutter, M.D., a

3 diplomate of the American Board of Psychiatry and Neurology, who

4 examined Plaintiff in August 2004 and was told by Plaintiff that

5 she wanted a counselor and suffered loss of memory, terrible

6 sleep, and decreased concentration. (A.R. 486-92.) Dr. Sutter

7 diagnosed depressive disorder not otherwise specified and mood

8 disorder secondary to fibromyalgia or auto-immune disorders. He

9 opined that Plaintiff had a moderate impairment in relating to

10 coworkers, supervisors, and the public; mild to moderate

11 impairment in performing detailed and complex tasks due to

12 depression and chronic pain; and moderate impairment in

13 maintaining regular attendance. (A.R. 491.) Thus, the record

14 supports a finding that Dr. Moles's RFC was considerably more

15 restrictive that Dr. Sutter's.

16    Further, despite the ALJ's limited adoption of Dr. Azevedo's

17 opinion, the Court notes that Dr. Moles's opinion was also

18 largely inconsistent with the report of Joe Azevedo, Ph.D., who

19 examined Plaintiff on a consulting basis in August and reported

20 in September 2005 that Plaintiff could understand, remember, and

21 perform simple, repetitive tasks, but was slightly impaired in

22 the ability to perform tasks with detailed instructions due to

23 concentration difficulties. She was slightly impaired in the

24 ability to interact appropriately with others and adjust to

25 changes in the work setting; and she was moderately limited in

26 the ability to respond appropriately to work pressures in an

27 actual work setting. (A.R. 519-28.)

28    Therefore, the ALJ stated specific and legitimate reasons

for rejecting the opinion of Dr. Moles, and those reasons were supported by substantial evidence in the record.

### C. Examining Physicians

Plaintiff correctly contends that the ALJ failed to state adequate reasons for selectively crediting portions of the opinions of the examining, consulting doctors and selectively discrediting other parts of those opinions.

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The uncontradicted opinion of an examining physician may be rejected only if the Commissioner provides clear and convincing reasons for rejecting it. Id.; Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001). An ALJ may reject the opinion of an examining physician and adopt the contradictory opinion of a nonexamining physician only for specific and legitimate reasons that are supported by substantial evidence in the record. Moore v. Commissioner of Social Security Administration, 278 F.3d 920, 925 (9th Cir. 2002) (quoting Lester v. Chater, 81 F.3d at 830-31).

### 1. Dr. Azevedo

The ALJ noted the examination, diagnosis, and the previously described RFC of Dr. Azevedo from 2005. (A.R. 23-24.) The ALJ recounted that Dr. Azevedo noted that test results indicated that Plaintiff's profile reflected exaggeration of symptoms or malingering; testing revealed average memory, and mildly impaired concentration with reduced performance score because of peripheral hand pains. (A.R. 525-26.) Dr. Azevedo's diagnosis was pain disorder with both psychological factors and a general

medical condition, generalized anxiety disorder, and a GAF score of 57.[6] (A.R. 519-28.)

The ALJ did not adopt Dr. Azevedo's opinion that Plaintiff was moderately limited in managing work pressures and responding to changes in a typical work setting; instead, the ALJ found that Plaintiff was slightly limited in the ability to perform simple, repetitive tasks. (A.R. 21, 519-21.) However, the ALJ expressly stated that he gave more weight to Dr. Azevedo's opinion because it was consistent with the record, and he had the opportunity to examine Plaintiff. Nevertheless, he did not articulate any reasons for rejecting part of Dr. Azevedo's opinion.

The ALJ likewise mentioned the opinions of Drs. Sutter, Behniwal, and Rajguru as opinions given more weight because they were consistent with the record, and the doctors had the opportunity to examine Plaintiff. (A.R. 254.)

### 2. Dr. Rajguru

Amit Rajguru, M.D., who was board-certified in internal medicine, performed a consulting examination of Plaintiff on December 12, 2003. (A.R. 344-46.) Plaintiff reported that her pain was relieved by rest and medication. Dr. Rajguru found tenderness to palpation throughout the extremities; small effusion of the right knee with some crepitus with range of motion testing; adequate musculature, fist formation, and grip bilaterally; and normal range of motion of all other joints with no deformity, heat, swelling, or redness. Dr. Rajguru opined that

---

[6] A GAF of 55 (i.e., within the range of 51 through 60), indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV-TR at 34.

1  Plaintiff's chronic paroxysmal vertigo of unclear etiology,
2  fibromyalgia syndrome, and right knee degenerative joint disease
3  rendered Plaintiff able to lift and carry twenty pounds
4  occasionally and ten pounds routinely, sit for six hours of an
5  eight-hour work day, and stand and walk for two hours in an
6  eight-hour workday. The ALJ, however, found without explanation
7  that Plaintiff could stand and walk for six hours a day despite
8  the ALJ's putting more weight on Dr. Rajguru's opinion. (A.R.
9  21.)

10      Thus, the ALJ failed to articulate his findings and
11  reasoning concerning the opinions on which he relied in
12  determining Plaintiff's RFC.

### 3. Dr. Behniwal

14      Despite expressly giving more weight to this opinion, the
15  ALJ did not adopt the opinion that Plaintiff could perform
16  simple, repetitive tasks as well as detailed and complex tasks,
17  and that Plaintiff could perform work activities on a consistent
18  basis without any special or additional supervision.

### 4. Dr. Sutter

20      Although the ALJ stated that he gave greater weight to Dr.
21  Sutter's opinion (A.R. 25), he did not adopt Dr. Sutter's opinion
22  that Plaintiff had moderate symptoms, moderate impairment in
23  dealing with coworkers, supervisors, and the public in a work
24  situation, moderate impairment in maintaining regular attendance
25  in the workplace due to chronic pain and depression, and mild to
26  moderate impairment performing detailed and complex tasks. (A.R.
27  25, 23, 21.) Further, he did not explain his failure to adopt
28  these limitations.

D. <u>Non-examining State Agency Consultants</u>

The ALJ stated that the opinions of the state agency physicians were weighed as statements from non-examining expert sources, although the consultants who completed the psychiatric review technique and mental residual functional capacity assessment were given less weight because they never examined Plaintiff, and those who completed the physical RFC assessment were given more weight because their opinions were supported by the record. (A.R. 25.) State agency medical consultants Drs. Nguyen and Pong opined that Plaintiff could stand and walk at least two hours, but not six hours in an eight-hour work day; further, they stated that Plaintiff had specific limitations in visual acuity and depth perception. Finally, they stated that Plaintiff should avoid concentrated exposure to extreme cold, vibrations, and hazards due to her Raynaud's and vertigo. (A.R. 231, 233, 234.)

The ALJ did not explain why he failed to credit these portions of the state agency medical consultants' opinions, which he had expressly credited. Accordingly, the ALJ's decision failed to reflect adequate findings and reasoning concerning those findings.

In summary, the matter must be remanded for the ALJ to state reasons for his treatment of the expert opinions that he purported to credit in determining Plaintiff's RFC, and to proceed, as is necessary and appropriate, to determine whether Plaintiff could perform Plaintiff's past relevant work or other work existing in sufficient quantity in the economy. In completing the remainder of the five-step analysis upon remand,

1 the ALJ shall state all necessary findings and conclusions, which

2 shall be accompanied by a legally adequate statement of the ALJ's

3 reasoning.

4     V. <u>Vision</u>

5     Plaintiff also argues that the ALJ's finding that

6 Plaintiff's diminished vision condition could be corrected lacks

7 the support of substantial evidence; further, the ALJ, who

8 credited the state agency physicians' opinions, failed to explain

9 his apparent rejection of the opinions of state agency

10 consultants Drs. Nguyen and Pong that Plaintiff suffered from

11 near and far acuity limitations in the left eye and depth

12 perception limitations in both eyes.

13     This matter must be returned to the agency for further

14 articulation of Plaintiff's RFC and of the reasoning supporting

15 the ALJ's treatment of the expert opinions, including the failure

16 to impose any visual limitation based on Plaintiff's limited

17 acuity and depth perception as opined by the state agency

18 physicians. Further, after reviewing all the pertinent evidence

19 in the record concerning Plaintiff's visual limitations, the ALJ

20 will have the opportunity to cite to the evidence in the record

21 upon which he bases any conclusion concerning medical correction

22 of Plaintiff's vision.

23     VI. <u>Disposition</u>

24     Based on the foregoing, the Court concludes that the ALJ's

25 decision was not supported by substantial evidence in the record

26 as a whole and was not based on proper legal standards.

27     Accordingly, it IS ORDERED that

28     1. Plaintiff's social security complaint IS GRANTED, and

1    2. The matter IS REMANDED pursuant to sentence four of 42

2  U.S.C. § 405(g) for further consideration, consistent with this

3  decision, of Plaintiff's status as disabled, including

4  Plaintiff's residual functional capacity resulting from all her

5  impairments, including but not limited to her visual impairment,

6  and for articulation of legally sufficient reasons, supported by

7  substantial evidence, for the ALJ's crediting and discrediting of

8  the opinions of the experts concerning Plaintiff's RFC; and for

9  further consideration, as appropriate, and articulation of

10 legally sufficient findings concerning, whether or not Plaintiff

11 could perform Plaintiff's past relevant work, and whether,

12 considering Plaintiff's age, education, work experience, and

13 residual functional capacity, she could perform any other gainful

14 and substantial work within the economy; and

15    3. Judgment BE ENTERED for Plaintiff Barbara Logan-

16 Laracuente and against Defendant Michael J. Astrue.

17

18 IT IS SO ORDERED.

19 **Dated:    October 6, 2008**            **/s/ Sandra M. Snyder**
                                    UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28